## EMPLOYMENT AGREEMENT OF PATRICIA M. WALKER

This Employment Agreement is made effective for all purposes and in all respects as of the 1st day of October, 2014, by and between SC REALTY SERVICES, INC., a Kansas corporation (hereinafter referred to as "Employer"), and PATRICIA M. WALKER, an individual, (hereinafter referred to as "Employee").

### RECITALS

WHEREAS, Employer is engaged in the business of providing cleaning services, and maintains its principal place of business at 11225 College Boulevard, Suite 120, Overland Park, Kansas 66210;

WHEREAS, in connection with such business, Employer desires to employ Employee in the capacity of Director of Sales;

WHEREAS, Employee desires to be employed by Employer in the aforesaid capacity; and

WHEREAS, Employer and Employee desire to set forth, in writing, the terms and conditions of their agreements and understandings.

NOW, THEREFORE, WITNESSETH, in consideration of the premises, of the mutual promises herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending legally to be bound, hereby agree as follows:

1.    Term of Employment.  Employer shall employ Employee in the capacity above set forth. Such employment shall commence on the date hereof, and terminate two years later, unless sooner terminated in accordance with the provisions of Section 10 hereof; thereafter, this Agreement, and all terms and provisions hereof, shall be automatically extended from month-to-month.

2.    Duties of Employee.

2.01.  In accepting such employment, Employee shall undertake and assume the responsibility of performing for and on behalf of Employer such duties as shall be assigned to Employee by Employer at any time and from time to time.  It is understood and agreed that Employee's principal duties on behalf of Employer at the date of execution hereof shall be as Director of Sales, as more particularly described on Exhibit A, attached hereto and incorporated herein by reference.  It is further understood and agreed that any modification in or expansion of Employee's duties hereunder shall not, unless specifically agreed by Employer in a duly-executed amendment of this Agreement, result in any modification in, increase or decrease of Employee's compensation referred to in Section 3 hereof.

{1373/014//00878629;5 }

**EXHIBIT E**

2.02.   Employee covenants and agrees that she will, at all times, faithfully, industriously, and to the best of her ability, experience and talents, perform all of the duties that may be required of and from such Employee pursuant to the express and implicit terms hereof, to the reasonable satisfaction of the Employer.

2.03.   Employee shall devote all of her time, attention, knowledge and skills solely to the business and interest of Employer, and Employer shall be entitled to all of the benefits, profits or other issues arising from or incident to all work, services and advice of Employee, and Employee shall not, during the term hereof, be interested directly or indirectly, in any manner, as partner, officer, director, stockholder, advisor, employee or in any other capacity in any other business similar to Employer's business or any allied trade; provided, however, that nothing herein contained shall be deemed to prevent or limit the right of Employee to invest any of her funds in the capital stock or other securities of any corporation whose stock or securities are publicly owned or are regularly traded on any public exchange.

3.   Compensation. Employer shall pay Employee, and Employee shall accept from Employer, in full payment for Employee's services to be rendered for Employer hereunder, the following annual salary, Eighty Thousand and No/100 Dollars ($80,000.00), to be paid to Employee on a (monthly) (bi-weekly) (weekly) basis.

3.01.   Additional Benefits. In addition to, and not in limitation of the compensation referred to in Section 3 hereof, Employee shall be entitled to receive from Employer the following additional benefits during the term hereof automobile allowance of $400 per month and four weeks of paid vacation per year to accrue pro rata during each year. Employee will be eligible to participate in the Employer's health insurance on the same terms as other employees of Employer. Employee will be eligible for such cell phone benefits as other managers of Employer receive.

3.02.   Commissions. After two years (and when section 1.3(a)(iii) of the Amended and Restated Asset Purchase Agreement dated as of approximately even date herewith between Employer as Buyer and Magic Touch Cleaning, Inc. is no longer in effect), Employee will be eligible to participate in Employer's commission program.

3.03.   Reimbursement of Business Expenses. Employee is hereby authorized by Employer to incur reasonable, ordinary and necessary business expenses for promoting Employer's business, including expenditures for travel and entertainment. Employee shall reimburse Employee for all such business expenses, provided that Employee submits to Employer an account book, diary, or similar record in which Employee has recorded, at or near the time each expenditure was made, (1) the amount of the expenditure, (2) the time, place, and nature of the travel or entertainment expense, (3) the business reason for the expenses and the business benefit derived or expected to be derived therefrom, and (4) the names, occupations, and other data concerning individuals entertained sufficient to establish their business

{1373/014//00878629;5 }

- 2 -

**EXHIBIT E**

relationship to Employer. The right to reimbursement is also subject to the requirement that Employee submit to Employer supporting documents, such as receipts or paid bills, sufficient to establish the amount, date, place, and essential character of any such expenditure.

4.   Disclosure of Information.   Employee acknowledges that, in and as a result of her employment hereunder, she will be making use of, acquiring and/or adding to confidential information of a special and unique nature and value relating to such matters as Employer's trade secrets, systems, procedures, manuals, confidential reports and lists of customers or clients, or other similar data, as well as the nature and type of cleaning and/or other services rendered by Employer, the equipment and methods used and preferred by Employer's clients, and the fees paid by such customers or clients. As a material inducement to Employer to enter into this Agreement, and to pay to Employee the compensation referred to in Section 3 hereof, as well as any additional benefits referred to herein, Employee covenants and agrees that she shall not, at any time during or following the cessation of her employment hereunder, directly or indirectly, divulge or disclose, for any purpose whatsoever, any of such confidential information which has been obtained by or disclosed to her as a result of her employment by Employer. In the event of a breach or threatened breach by the Employee of any of the provisions of this Section, Employer, in addition to and not in limitation of any other rights, remedies or damages available to Employer at law or in equity, shall be entitled to a permanent injunction in order to prevent or to restrain any such breach by Employee, or by Employee's partners, agents, representatives, servants, employers, employees and/or any and all persons directly or indirectly acting for or with Employee. Upon cessation of employment for whatever reason, all documents, records (including without limitation, customer records and lists), notebooks, invoices, statements or correspondence, including copies thereof, relating to the business of the Employer then in Employee's possession or control, whether prepared by Employee or others, shall remain Employer's exclusive property and will be delivered to and left with the Employer.

During the course of Employee's employment with Company, Employee will not accept information from sources outside of Employer that is designated as "Confidential", or "Proprietary", or "Trade Secret" without prior written permission from Employer, or its attorneys. Employee is hereby notified that Employee is not expected to and is, expressly forbidden by Employer's policy from disclosing to Employer "Trade Secret" or Confidential" or "Proprietary" information from a former employer.

During Employee's employment, or upon leaving the employment of the Employer, Employee will not remove from Employer's premises, either directly or indirectly, any drawings, writings, prints, any documents or anything containing, embodying, or disclosing any confidential or proprietary information or any of the Employer's trade secrets unless express written permission is given by Employer's management.

5.   Covenants Against Competition.  Employee acknowledges that her services to be rendered hereunder are of a special and unusual character which have a unique value to Employer, the loss of which cannot adequately be compensated by damages in an action at law. In view of the unique

{1373/014//00878629;5 }

- 3 -

**EXHIBIT E**

value to Employer of the services of Employee for which Employer has contracted hereunder, and because of the confidential information to be obtained by or disclosed to Employee, as hereinabove set forth, and as a material inducement to Employer to enter into this Agreement, and to pay to Employee the compensation referred to in Section 3 hereof, as well as any additional benefits referred to herein, Employee covenants and agree as follows:

A.     During Employee's employment hereunder and for a period of three (3) years after she ceases to be employed by Employer for whatever reason, Employee shall not, directly or indirectly, solicit business from, divert business from, or attempt to convert to other methods of using the same or similar products or services as provided by Employer, any customer, client, account or location of Employer with which Employee has had any contact as a result of her employment by Employer hereunder.

B.     During Employee's employment hereunder and for a period of three (3) years after she ceases to be employed by Employer, Employee shall not, directly or indirectly, engage in any cleaning service or similar or related business in competition with Employer within a fifty (50)-mile radius of any geographic area where Employer is actually engaged in business, or maintains sales or service representatives of employees (whichever is shorter or smaller). Notwithstanding the foregoing, this paragraph shall not be construed to prohibit Employee from, directly or indirectly, selling supplies to janitorial service companies through Bullseye International SDVOB, Inc.

C.     During Employee's employment hereunder and for a period of three (3) years after she ceases to be employed by Employer, Employee shall not, directly or indirectly, solicit for employment or employ any employee of Employer.

D.     If any provisions under this section are violated, the restrictions shall run for a period of three (3) years after cessation of such violation.

The Employee further covenants and agrees that for so long as she is employed by the Employer, she shall inform the Employer of each and every future business opportunity presented to the Employee that arises within the scope of the business of the Employer, and would be feasible for the Employer, and that she will not, directly or indirectly, seek or exploit any such opportunity for her own account.

6.     Patents, Copyrights and Intellectual Property.  Employee hereby agrees:

6.01     To assign, transfer and set over, and does hereby assign, transfer and set over, to Employer, its successors and assigns all Employee's right, title and interest in and to any and all creations that are or may become legally protectable or recognized as forms of property including all designs, ideas, inventions, improvements, writings and other works of authorship, theses, books, computer programs, lectures, illustrations photographs, motion pictures, scientific and mathematical models, prints and any other subject matter that is or

{1373/014//00878629;5 }

- 4 -

**EXHIBIT E**

may become legally protectable or recognized as a form of property that Employee, either solely or jointly with others, has, conceived, made or suggested or may hereafter conceive, make or suggest during Employee's employment by Employer or its successors and assigns, and the six (6) month period next following the termination of such employment, and that in any way relate directly or indirectly to Employer's business, procedural, technical or commercial needs, problems, developments or projects or to Employer's production, research or experimental developments and projects of every name and nature under, consideration and/or being carried on by or for Employer prior to termination of Employee's employment or which in any way are likely to be of benefit to the Employer, provided that such designs, ideas, inventions, improvements and other creations are originated, created, developed or perfected (a) in the performance of the general duties for which Employee is employed, or (b) with the use of any time, material, or facilities of the Employer, or (c) relate to any apparatus, machine, method, composition, process or article of manufacture or method of doing business within the scope of the Employer's field of activity or of same general character during Employee's employment including the subject matter of any manufacturing, selling, testing, research, or experimental activity.

6.02     To execute, acknowledge, make and deliver to Employer or its attorneys, without additional compensation but without expense to Employee, any and all instruments, including United States and foreign patent applications, applications for, securing, protecting or registering any property rights embraced within this agreement, powers of attorney, assignments, oaths or affirmations, supplemental oaths and sworn statements, and to do any and all lawful acts that, in the judgment of Employer or its attorneys, may be necessary or desirable to vest in or secure for, or maintain for the benefit of, Employer adequate patent and other property rights in the United States and, all foreign countries with respect to any and all such designs, ideas inventions, improvements and other creations embraced within this agreement, whether published or unpublished and whether or not the subject of statutory industrial property or copyright protection.

6.03     To disclose promptly to Employer or its attorneys any and all such ideas, designs, inventions, improvements, and other creations when conceived or made by Employee, and to report promptly to the Employer all information of which Employee may become aware during, Employee's employment. and which may be of benefit to the Employer or which may prevent or minimize loss, by the Employer and of which the Employer may not otherwise then have knowledge

7.     <u>Accounting for Profits</u>.  Employee covenants and agrees that, if she shall violate any of her covenants or agreements under Sections 4, 5 and 6 hereof, Employer shall be entitled to an accounting and repayment of all profits, compensation, commissions, remunerations or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of or in connection with any such violation; such remedy shall be in addition to and not in limitation of

{1373/014/00878629;5 }

**EXHIBIT E**

any injunctive relief or any other rights or remedies to which Employer is or may be entitled at law or in equity or under this Agreement.

8.     Reasonableness of Restrictions.

     A.     Employee has carefully read and considered the provisions of Sections 4, 5 and 6 hereof and, having done so, agrees that the restrictions set forth in such paragraphs, including, but not limited to, the time period of restriction and the geographical areas of restriction set forth in Section 5 hereof, are fair and reasonable and are reasonably required for the protection of the interests of Employer, its officers, directors and other employees.

     B.     In the event that, notwithstanding the foregoing, any of the provisions of Sections 4, 5 and 6 hereof shall be held to be invalid or unenforceable, the remaining provisions thereof shall nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included therein.  In the event that any provision of Section 4, 5 or 6 relating to time periods and/or areas of restriction shall be declared by a court of competent jurisdiction to exceed the maximum time period or areas such court deems reasonable and enforceable, said time periods and/or areas of restriction shall be deemed to become and thereafter be the maximum time period and/or areas which such court deems reasonable and enforceable.

9.     Remedies in Event of Breach.  Recognizing that irreparable damage will result to the Employer, and to the business of the Employer, in the event of the breach by the Employee of any of the covenants and assurances contained in Section 4, 5 and 6 hereof if Employee shall violate the provisions of said Sections, Employer shall be entitled to enjoin and restrain such Employee and each and every person, firm, Employer or corporation concerned therewith, from the continuance of such violation of the terms of said section, who shall pay to Employer, in addition thereto, all damages, including reasonable attorneys' fees, sustained by the Employer by reason of said violation. If Employer shall bring an action for the enforcement of any or all provisions hereof, and if the court shall find on the basis of the evidence introduced in the said action that such provision is unreasonable either as to time, area or activity covered therein, or otherwise, then the court shall make a finding as to what is reasonable and shall enforce this agreement by judgment or decree to the extent of such finding.

     Recognizing that it will be extremely difficult to determine the exact damages which will be sustained by Employer, as a result of said violation of Sections 4, 5 and 6 by the Employee, such Employee shall pay to Employer as liquidated damages an amount equal to One Thousand Dollars ($1,000) for each day the violation shall continue. Such damages and payments shall not be considered a penalty but as a reasonable estimate of the actual damages which would be suffered by Employer as a result of any such violation.  In the event that any payment provided for herein, as liquidated damages, shall be determined by any court of competent jurisdiction to constitute a penalty, or shall be determined to be void for any reason whatsoever, it is the intent of the parties,

{1373/014//00878629;5 }

- 6 -

**EXHIBIT E**

and they hereby agree that all other provisions of this Agreement shall remain valid and binding upon the parties. Payment of liquidated damages by any Employee for violation of this Agreement, shall be in addition to the injunction against further violation, to which Employer is entitled and it is not intended to be, and shall not be construed to be, in lieu of said injunction.

If Employer is found to be in breach of this Agreement, Employer shall pay such damages, including reasonable attorneys' fees, directly sustained by the Employee by reason of said violation, but shall not be responsible for any consequential, punitive or exemplary, or pain and suffering damages.

10.    Termination.  This Agreement may be terminated as follows:

10.01. Termination Without Cause.  Without cause, the Employer may terminate Employee's employment under this Agreement at any time upon thirty (30) days' written notice to the Employee.  In such event, the Employee, if requested by the Employer, shall continue to render her services, and shall be paid her regular compensation up to the date of termination.  In addition, there shall be paid to the Employee on the date of termination a severance allowance of three months' salary, less all amounts required to be withheld and deducted.  Without cause, the Employee may terminate this Agreement upon thirty (30) days' written notice to the Employer.  In such event, the Employee shall continue to render her services and shall be paid her regular compensation up to the date of termination, but no severance allowance shall be paid to Employee.  Employer shall have the option to discontinue Employee's services and continued compensation at any time during said notice period.

10.02. Termination for Cause.  Notwithstanding any other provision hereof, Employer may terminate Employee's employment under this Agreement at any time for cause.  Such termination shall be evidenced by written notice thereof to the Employee, which notice shall specify the cause for termination.  For purposes hereof, the term "cause" shall include, without limitation, the inability of Employee, through sickness or other incapacity, to perform her duties under this Agreement for a period in excess of fifteen (15) substantially consecutive days; dishonesty; theft; conviction of, or a plea of guilty or no-contest to, a crime; abuse of alcohol or drugs; unethical business conduct; or a material breach of this Agreement.  The term "cause" shall also include the failure of Employee for any reason, within ten (10) days after receipt by Employee of written notice thereof from Employer, to correct, cease or otherwise alter any insubordination, failure to comply with instructions or other action or omission to act which Employer believes does or may materially or adversely affect its business or operations.

10.03. Termination Due to Discontinuance of Business.  Anything herein contained to the contrary notwithstanding, in the event that Employer shall discontinue operating its business at 11225 College Boulevard, Suite 120, Overland Park, Kansas 66210, or any other location

{1373/014//00878629;5 }

- 7 -

**EXHIBIT E**

within the Kansas City metropolitan area, then this Agreement shall terminate as of the last day of the month on which Employer ceases operations at such location with the same force and effect as if such last day of the month were originally set as the termination date hereof.

10.04. <u>Termination for Disability</u>.  Notwithstanding anything in this Agreement to the contrary, Employer is hereby given the option to terminate this Agreement in the event that Employee shall, during the term hereof, become permanently disabled as the term permanently disabled is hereinafter fixed and defined.  Such option shall be exercised by Employer giving notice to Employee of Employer's intention to terminate this Agreement on the last day of the month during which such notice is mailed.  On the giving of such notice, this Agreement shall cease on the last day of the month in which the notice is so mailed, with the same force and effect as if such last day of the month were the date originally herein set forth as the termination date hereof.

For the purpose of this Agreement, Employee shall be deemed to have become permanently disabled, if during any year of the term hereof, because of ill health, physical or mental disability or for other causes either beyond or within Employee's control Employee shall have been continuously unable or unwilling or shall have failed to perform Employee's duties hereunder for fifteen (15) consecutive days.

10.05. <u>Return of Materials</u>.  Employee agrees that upon the termination of her employment with Employer for any reason whatsoever, she will promptly return to Employer all manuals, records, training materials, customer lists, sales information, computer software and other information pertaining to transactions handled by Employee, or pertaining to Employer's business and all copies of the same.

10.06. <u>Ownership of Accounts</u>.  All accounts produced by Employee shall become the property of Employer and Employee shall have no right, title or interest in such accounts or any records of Employer pertaining to such accounts.

11. <u>Employee's Inability to Contract for Employer</u>.  Notwithstanding anything herein contained to the contrary, Employee shall not have the right to make any contracts or commitments for or on behalf of Employer, on other than the standard terms Employer provides to its other customers, without first obtaining the written consent of Employer.

12. <u>Miscellaneous</u>:

12.01 <u>Modification of Contract</u>.  No waiver or modification of this Agreement or of any covenant, condition, or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith and no evidence of any waiver or modification shall be offered or received in evidence of any proceeding, arbitration, or litigation between the parties hereto arising out of or affecting this Agreement, or the rights or obligations of the

{1373/014//00878629;5 }

**EXHIBIT E**

parties hereunder, unless such waiver or modification is in writing, duly executed as aforesaid, and the parties further agree that the provisions of this Section 12.01 may not be waived except as herein set forth.

12.02   Burden and Benefit; Assignability.   This Agreement and the Employer's rights hereunder may be assigned by the Employer to any other entity now or hereafter affiliated with the Employer or to any entity who may purchase all or a material portion of the business or assets of the Employer or of any entity now or hereafter affiliated with the Employer. Neither this Agreement nor any rights hereunder may be assigned by Employee without the Employer's prior written consent. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Employer and Employee.

12.03   Governing Law.   In view of the fact that the principal office of Employer is located in the State of Kansas, it is understood and agreed that the construction and interpretation of this Agreement shall at all times and in all respects be governed by the laws of the State of Kansas.

12.04   Severability.   The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of the provisions hereof shall not affect the validity and enforceability of the other provisions hereof.

12.05   Construction.   As used herein, the term "Employer" shall include any corporation which is at any time the parent or a subsidiary of Employer, and for which the Employee is providing services in any form during the term of her employment under this Agreement. Throughout this Agreement, the masculine, feminine or neuter genders shall be deemed to include the masculine, feminine and neuter and the singular, the plural and vice versa. The headings of the Sections of this Agreement are for reference only and do not limit, expand or otherwise affect the contents of this Agreement.

12.06   Notices.   Any notice required to be given hereunder shall be sufficient if in writing, and sent by certified or registered mail, return receipt requested, first-class postage prepaid, to her residence in the case of Employee, and to its principal office in the State of Kansas in the case of Employer.

12.07   Entire Agreement.   This Agreement contains the entire agreement and understanding by and between Employer and Employee with respect to the employment herein referred to, and no representations, promises, agreements, or understandings, written or oral, not herein contained shall be of any force of effect. No change or modification hereof shall be valid or binding unless the same is in writing and signed by the party intended to be bound. No waiver of any provision of this Agreement shall be valid unless the same is in writing and signed by the party against whom such waiver is sought to be enforced; moreover, no valid

{1373/014//00878629;5 }

**EXHIBIT E**

waiver of any provision of this Agreement at any time shall be deemed a waiver of any other provision of this Agreement at such time or will be deemed a valid waiver of such provision at any other time.

12.08  Waiver of Breach.  The waiver by the Employer of a breach of any provision of this Agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee.

12.09  Assignment.  The rights and obligations of the Employer under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Employer.

12.10  Voluntary Execution.  THE EMPLOYEE STATES THAT SHE HAS FREELY AND VOLUNTARILY ENTERED INTO THIS AGREEMENT AND THAT SHE HAS READ AND UNDERSTOOD EACH AND EVERY PROVISION THEREOF.   THIS AGREEMENT IS EFFECTIVE UPON THE EXECUTION OF THIS AGREEMENT BY BOTH PARTIES.

12.11  Dispute Resolution.  Each party agrees that any judicial proceeding arising out of or relating to this Agreement (including any declaratory judgments) shall be filed exclusively in the District Court of Johnson County, Kansas, or in the United States District Court in Kansas City, Kansas.  Each party also hereby consents to and will submit to, the personal and subject matter jurisdiction of any State or Federal court within the State of Kansas in any proceeding to enforce any of its obligations under this Agreement.  The choice of forum set forth in this subsection shall not be deemed to preclude the enforcement of any action under this Agreement in any other jurisdiction.

12.12  Waiver of Jury Trial.   Employer and Employee hereby irrevocably and unconditionally waive any right that they may have to a trial by jury in any action involving, directly or indirectly, any matter (whether sounding in tort, contract or otherwise) in any way arising out of, related to, or connected with this Agreement or any ancillary agreement or the relationship established hereunder or thereunder.

**EXHIBIT E**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

EMPLOYER:
SC REALTY SERVICES, INC.

By: _____
David Harvey
President

EMPLOYEE:
PATRICIA M. WALKER

_____

Address:

_____
_____
_____

{1373 014 00878629.5 }

**EXHIBIT E**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

EMPLOYER:
SC REALTY SERVICES, INC.


By:_____
     David Harvey
     President

EMPLOYEE:
PATRICIA M. WALKER



Address:

349 NW Rockhill Lane
LS MO 64081

{1373/014//00878629;5 }

- 11 -

**EXHIBIT E**

EXHIBIT A

DIRECTOR OF SALES

JOB RESPONSIBILITIES

Position Overview:    The Director of Sales will be responsible for overseeing the daily business development of the Employer. In addition to securing new business for the Employer this position will also be responsible for building relationships with the existing customer base as an additional point of contact. In addition, to sales and customer retention, this position may oversee other personnel in the sales area. All sales reporting will be the responsibility of the Director of Sales.

Responsibilities:    To develop and maintain a comprehensive database of current and potential customers in the specific geographic market area, manage sales process approved by the Employer which includes regular warm and cold calling programs and maintain the pipeline reporting system. Also assist in the development and refinement of our quality control program and conduct inspection reports.

Reporting Requirements:
    Monthly:
        Prepare a pipeline activity report
        Prepare a monthly commission report

    Quarterly:
        Prepare a Quarterly update report which will include an analysis of YTD versus budget.

    Yearly:
        Prepare the annual Sales Budget
        Present a year-end overview of the sales area

{1373/014//00878629;5 }

**EXHIBIT E**